USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/11/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**-----------------------------------------------------------------X**

**MARY B.,**

**Plaintiff,**

**-against-**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**-----------------------------------------------------------------X**

**25-CV-01688 (SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Mary B. ("Plaintiff"), proceeding *pro se* and on behalf of her deceased husband Peter D. ("Peter"), seeks judicial review pursuant to 42 U.S.C. § 405(g) of the determination of the Commissioner of Social Security (the "Commissioner") finding that Peter was not entitled to an earlier protective filing date for retirement insurance benefits ("RIB") due to receiving misinformation.[1] See ECF No. 10. Plaintiff also alleges that the Administrative Law Judge ("ALJ") in the underlying proceeding erred in not considering Peter's claim that his earnings record is incorrect. Id.

Plaintiff's motion for Judgment on the Pleadings is DENIED, and the Commissioner's decision is AFFIRMED. The Commissioner's cross-motion for summary judgment with respect to Plaintiff's incorrect earnings record claim is GRANTED.

[1] The Court identifies Plaintiff and her late husband by first name and last initial in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. See Joelyn M. v. Comm'r of Soc. Sec., No. 24-CV-8756 (GRJ), 2025 WL 3059761, at *1 n.1 (S.D.N.Y. Nov. 2, 2025).

## BACKGROUND

### I. Factual Background and Administrative Proceedings

On or about February 18, 2015, Peter protectively filed an application for RIB at the age of 78. See ECF No. 9, Administrative Record ("R."), at 22, 53. On May 11, 2015, the Social Security Administration (the "SSA") notified Peter that he was entitled to monthly RIB beginning August 2014, six months before his protective filing date. R. 60. In April 2016, Peter filed a Request for Reconsideration claiming that he was entitled to RIB dating back to 2006 because he was given misinformation by an SSA employee. R. 22, 70–71. Specifically, he claimed that when he and his wife (Plaintiff) visited their local SSA office in New York, an SSA service window employee told him that he could apply for RIB at any time but failed to mention that if he waited to apply, he would not receive all the benefits to which he was entitled. R. 23, 31–32, 70. As a result of this alleged misinformation, Peter did not apply for RIB when he turned 70 and instead waited eight years to apply. R. 23, 40–41, 70.

On July 13, 2017, the SSA denied Peter's request for retroactive benefits going back to when he turned 70. R. 74–77. The notice of denial stated that the SSA found no records of Peter contacting the SSA before he filed his RIB application in 2015. R. 74. The notice also stated that Peter did not provide the SSA with any specific information about the dates he contacted the SSA or the service window employee who allegedly provided him with the misinformation. R. 76. Accordingly, the SSA determined that a misinformation claim had not been sufficiently established. R. 74–76.

Peter subsequently filed a request for an ALJ hearing regarding his claim, which was held on August 15, 2019, before ALJ Moises Penalver. R. 22, 26, 78. During the hearing, Plaintiff testified as a witness on behalf of her husband and without counsel present. R. 26–45. Plaintiff

corroborated Peter's claim and testified that they were provided with misinformation through a verbal conversation with an SSA employee during a field office visit in 2006. R. 35. She also said that they were not provided with any paperwork by the SSA employee and that they did not attempt to contact the SSA again until Peter applied for RIB in 2015. Id.

During the ALJ hearing, Plaintiff also mentioned that there was a separate issue involving Peter's RIB earnings record, which allegedly did not include Peter's earnings while he was self-employed for several years. R. 33. Plaintiff stated that they did not report this issue to the SSA before 2015 because they did not know that several years of Peter's self-employment earnings were missing from his SSA record. R. 33–34. She also noted that they did not provide the SSA with the necessary documentation to correct the alleged RIB miscalculation because they were advised to address the misinformation issue first before requesting corrections to the earnings record. R. 34–35. The ALJ directed Plaintiff and Peter to submit copies of Peter's tax returns for the alleged missing years of earnings, which Plaintiff subsequently submitted on October 14, 2019. R. 39, 286.

On January 24, 2020, the ALJ issued his decision finding that there was "no substantial evidence" to support granting an earlier protective filing date. R. 22–23. The ALJ determined that there was "no preferred evidence of misinformation such as a document or written report of contact indicating that [Peter] was misinformed prior to filing for [RIB]." R. 23. Moreover, the ALJ found that "no other evidence was provided" to support Peter's claims, such as specific dates of contact or who gave the alleged misinformation. Id. Accordingly, the ALJ concluded that Peter was not entitled to a protective filing date earlier than February 18, 2015. R. 24.

With respect to the separate incorrect earnings claim, the ALJ directed Peter to go to his local SSA office to discuss how to proceed with addressing the errors in his earnings record. R. 22. The ALJ did not address the issue further in his decision. Id.

On March 10, 2020, Plaintiff filed a request for review of the ALJ's decision on behalf of her husband. R. 290–91. Peter unfortunately passed away on November 23, 2021, and Plaintiff continued the action on his behalf. R. 13. On June 1, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. R. 8–10.

**II. Plaintiff's Federal Case**

After receiving an extension of time to file her Complaint in federal court, Plaintiff (represented by counsel at the time) timely filed this action on February 27, 2025, seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). R. 1; ECF No. 1. On August 6, 2025, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, asking that the Court reverse the Commissioner's final decision and find that (1) the SSA provided misinformation to Plaintiff and her husband regarding RIB and (2) the SSA incorrectly calculated Peter's earnings record. See ECF No 10. The Commissioner opposed Plaintiff's motion on November 24, 2025, and moved for summary judgment with respect to Plaintiff's incorrect earnings record claim. See ECF No. 20. On March 9, 2026, Plaintiff (no longer represented by counsel and proceeding *pro se*) filed her reply brief and a response to the Commissioner's Local Civil Rule 56.1 Statement. See ECF No. 32.

## DISCUSSION

### I. Plaintiff's Misinformation Claim

#### A. Standard of Review

In reviewing the Commissioner's decision, the Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An ALJ's determination may be set aside if it is "based upon legal error or is not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Commissioner's findings are "conclusive" unless they are not supported by substantial evidence on the record. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995). The standard of review is thus "very deferential . . . even more so than the clearly erroneous standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). Accordingly, "[t]he court's function is limited to assessing whether the Secretary applied the proper legal standards in making a determination and whether that determination is supported by substantial evidence on the record as a whole." Grubart v. Shalala, 913 F. Supp. 243, 245 (S.D.N.Y.), aff'd sub nom. Grubart v. Chater, 104 F.3d 353 (2d Cir. 1996).

Remand, however, is appropriate where the ALJ fails to provide adequate reasoning to support his decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("[W]e do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable us

to decide whether the determination is supported by substantial evidence."). In addition, filings by *pro se* litigants, such as Plaintiff, "are entitled to a liberal construction . . . [and] should be read to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted).

**B. Application**

Plaintiff claims that she, on behalf of her late husband Peter, is entitled to retroactive RIB commencing from when she and her husband were provided misinformation in 2006. See ECF No. 10 at 13–16. Under the Social Security Act (the "Act"), an individual is entitled to "old-age benefits" if he (1) is at least 62 years old, (2) has enough social security earnings to be fully insured, and (3) submits an application for RIB. See 20 C.F.R. § 404.310. In certain limited circumstances, an eligible individual who applies for RIB can receive retroactive benefits. Specifically, § 402(j)(5) of the Act provides that:

> In any case in which it is determined to the satisfaction of the Commissioner of Social Security that an individual failed as of any date to apply for monthly insurance benefits under this subchapter by reason of misinformation provided to such individual by any officer or employee of the Social Security Administration relating to such individual's eligibility for benefits under this subchapter, such individual shall be deemed to have applied for such benefits on the later of—
>
> (A) the date on which such misinformation was provided to such individual, or
>
> (B) the date on which such individual met all requirements for entitlement to such benefits (other than application therefor).

42 U.S.C. § 402(j)(5).

A claim pursuant to § 402(j)(5) "'must contain information that will enable the [SSA] to determine' that it did provide misinformation regarding eligibility for benefits." Card v. Colvin, No. 13-CV-177 (GLS)(ESH), 2014 WL 2510568, at *5 (N.D.N.Y. June 4, 2014) (quoting 20 C.F.R. § 404.633(f)). "The burden of proof is on the claimant to demonstrate that [he] received

misinformation from an agency employee that caused [him] to fail as of a particular date to apply for monthly insurance benefits." Thorp v. Apfel, No. 97-CV-809 (CEH), 1998 WL 683767, at *3 (W.D.N.Y. Sept. 17, 1998) (citing Grubart v. Shalala, 913 F. Supp. 243, 247 (S.D.N.Y. 1996)).

The SSA defines "misinformation" as information that was provided orally or in writing by an SSA employee that the SSA considers to be "incorrect, misleading, or incomplete" in light of the facts provided to the employee, or "of which the employee was aware or should have been aware, regarding [the claimant's] particular circumstances." See 20 C.F.R. § 404.633(c)(1)-(3). In assessing whether misinformation was provided, the SSA will first consider any available "preferred evidence" proving the alleged misinformation, which consists of written evidence that relates directly to the claimant's inquiry and that shows that the misinformation caused the claimant not to file an application for benefits. Id. at § 404.633(d)(1). In the absence of preferred evidence, the SSA will consider "other evidence, including [the claimant's] statements about the alleged misinformation." Id. at § 404.633(d)(2); see also id. at § 404.633(d)(2)(i)(A)-(E) (noting that relevant statements include statements about "[t]he date and time of the alleged contact(s)" and "[w]ho gave the misinformation"). However, the SSA "will not find that [it] gave [the claimant] misinformation . . . based solely on [the claimant's] statements." Id. at § 404.633(d)(2).

Plaintiff alleges that she and her husband were provided verbal misinformation when they visited an SSA field office in 2006 and an unidentified service window employee told them that Peter could apply for RIB "whenever" but failed to mention that he would not receive retroactive benefits if he waited to apply. See R. 31–32, 42; ECF No. 10 at 13–16. The ALJ, however, found "no preferred evidence" on the record, such as "a document or written report of contact," to support Plaintiff's claim of misinformation. See R. 23. With respect to "other evidence," the ALJ considered Plaintiff's testimony on behalf of her husband. Id. The ALJ determined that this was

also insufficient because she was unable to provide specific details about the alleged misinformation, such as the dates of contact or the employee who allegedly provided the misinformation. See R. 23, 31–32. Therefore, due to the lack of any "substantial evidence" to support the misinformation claim, the ALJ determined that Plaintiff's husband was not entitled to retroactive benefits going back to 2006. R. 23–24.

The ALJ's adverse decision was free from legal error and supported by substantial evidence in light of the absence of any "preferred evidence" on the record establishing misinformation. See 10 C.F.R. § 404.633(d)(1)(i)-(ii) (noting that "preferred evidence" can include a notice, letter, or other document which was addressed by the SSA to the claimant, or the SSA's record of its telephone call, letter, or in-person contact); R. 76 (July 2017 SSA misinformation determination finding that there were no agency records showing that Plaintiff's husband contacted the SSA before filing an application for RIB in 2015). In addition to the lack of any written evidence or agency records to support Plaintiff's claim, the "other evidence" provided (i.e., Plaintiff's testimony) lacked crucial details to support the misinformation claim, namely, any specific information about the dates of contact or the service window employee. See 10 C.F.R. § 404.633(d)(2)(i)(A)-(E) (noting that the SSA will consider "other evidence" such as relevant statement about "[t]he date and time of the alleged contact(s)" and "[w]ho gave the misinformation"); R. 31 (Plaintiff testifying about the alleged misinformation but not providing the specific date of contact or information about the alleged SSA employee beyond claiming that she "was a black lady").

Therefore, because Plaintiff's testimony is not sufficient on its own to establish a misinformation claim, there is no demonstrated error in the ALJ's determination that Plaintiff's husband was not entitled to an adjusted RIB application filing date. See 20 C.F.R. §

404.633(d)(2)) ("[The SSA] will not find that [it] gave [the claimant] misinformation . . . based solely on [the claimant's] statements."); see also Colombo v. Colvin, No. 12-CV-3495 (SJF), 2014 WL 4926319, at *5 (E.D.N.Y. Sept. 29, 2014) (finding that there was "substantial evidence" to support the Commissioner's final decision rejecting a misinformation claim because the SSA cannot find that a claimant was misinformed purely on the basis of the claimant's statements); Card, 2014 WL 2510568, at *6 (finding that an ALJ did not err in rejecting a plaintiff's misinformation claim because the plaintiff failed to provide any documentary evidence to support his claim). Accordingly, there is "substantial evidence" on the record to support the ALJ's adverse decision and remand is not appropriate on the basis of Plaintiff's misinformation claim.

## II. Plaintiff's Incorrect Earnings Record Claim

Plaintiff also claims that the ALJ erred in not considering certain corrections to her husband's earnings record. See ECF No. 10 at 17. Defendant moves for summary judgment on this claim, arguing that the incorrect earnings record claim is not properly before this Court because Plaintiff failed to exhaust the available administrative remedies. See ECF No. 20 at 16–21.

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 321–23 (1986). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" Jeffreys v. City of New York, 426 F.3d 549, 553

(2d Cir. 2005) (quoting Anderson, 477 U.S. at 248). A dispute concerning material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Anderson, 477 U.S. at 248).

In addition, when considering a motion for summary judgment, courts are required to give *pro se* plaintiffs "special solicitude." Quadir v. New York State Dep't of Lab., 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir. 1994)). Thus, where a plaintiff is *pro se*, courts must read their pleadings "liberally and interpret them to raise the strongest arguments that they suggest." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted). "A *pro se* plaintiff, however, cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor." Belpasso v. Port Auth. of New York & New Jersey, 400 F. App'x 600, 601 (2d Cir. 2010).

**B. Application**

In his January 24, 2020 decision, ALJ Penalver noted that Peter raised a claim that his earnings record for 1998, 1999, 2001–2006, 2008, and 2012 were incorrect. See R. 22. The ALJ, however, did not address the merits of this claim in his decision and instead directed Peter to "go to his local SSA office to discuss how to proceed with the issue." Id. Plaintiff claims that the ALJ erred in not considering the incorrect earning record issue in his decision. See ECF No. 10 at 17. Defendant argues that the matter was not properly before the ALJ at the time because Plaintiff's husband had not yet received an initial determination regarding the incorrect earnings record claim, thus making the claim administratively unexhausted. See ECF No. 20 at 16–21.

Pursuant to 42 U.S.C. § 405(g), an individual must obtain a "final decision" of the Commissioner before a district court can review a Social Security benefits determination. 42

U.S.C. § 405(g). "The requirement of a 'final decision' has two components: (1) a jurisdictional, non-waivable requirement that a claim for benefits has been presented to the agency, and (2) a waivable requirement that the administrative remedies prescribed by the Commissioner have been exhausted. Escalera v. Comm'r of Soc. Sec., 457 F. App'x 4, 5 (2d Cir. 2011) (summary order). Under the second prong, a claimant must generally proceed through the following four-step process to fully exhaust their claim: "[f]irst, the claimant must seek an initial determination as to his eligibility[;]" "[s]econd, the claimant must seek reconsideration of the initial determination[;]" "[t]hird, the claimant must request a hearing, which is conducted by an ALJ[;]" and "[f]ourth, the claimant must seek review of the ALJ's decision by the Appeals Council." Smith v. Berryhill, 587 U.S. 471, 475–76 (2019) (citing 20 C.F.R. § 416.1400). A claimant can obtain federal judicial review only after the claimant has proceeded through all four steps on the merits. Id. at 476.

There is no dispute that Plaintiff's husband presented his incorrect earnings record claim to the SSA, thus satisfying the first prong for judicial review under § 405(g). See R. 53–54 (summary of Peter's February 2015 application for RIB indicating that he was "not sure if [his] earnings as shown on [his] social security statement [were] correct" and identifying "possible gaps"). However, Plaintiff's incorrect earnings record claim fails to satisfy the second requirement for federal judicial review: that the claim was properly exhausted. See Escalera, 457 F. App'x at 5. Specifically, Plaintiff's husband never received an initial determination regarding the alleged inaccuracies in his earnings record. See 20 C.F.R. § 404.902(n) (noting that a determination regarding a requested revision of an earnings record may constitute an "initial determination" by the Commissioner). The only initial determination on the record addresses Plaintiff's misinformation claim, not the incorrect earnings record claim. See R. 74–76. Further,

it does not appear that Plaintiff's husband provided the necessary information for the agency to make an initial determination regarding the alleged deficiencies in his earnings record. In particular, as his wife testified during the ALJ hearing, Peter had not yet submitted a copy of his tax returns for the alleged missing years to support revising his earnings records.[2] See R. 34–35; see also 20 C.F.R. § 404.820(b)(4) ("A request should describe, or have attached to it, any available evidence which shows that the record of earnings is incorrect.").

Thus, when Plaintiff and her husband appeared before ALJ Penalver on August 15, 2019, they did not have an initial determination from the SSA regarding the incorrect earnings record claim. Without an initial determination (i.e., step one of the four-step process to administratively exhaust a claim), the earnings record claim was not properly before the ALJ at the time he issued his decision. The ALJ therefore appropriately declined to address the incorrect earnings record claim and correctly instructed Plaintiff's husband to go to his local SSA office to discuss how to proceed with the issue, which would eventually lead to an initial determination on the matter. See R. 22. Moreover, because Plaintiff's husband had not gone through the proper administrative process for addressing the incorrect earnings record issue, this claim is not fully exhausted and not properly before this Court. See Smith, 587 U.S. at 476 (noting that a claimant is entitled to § 405(g) judicial review in federal district court only after the claimant has "proceeded through all four steps on the merits").

There are, however, certain limited circumstances where a plaintiff's failure to exhaust a claim can be waived. Although Plaintiff does not raise a waiver argument, in light of her *pro se* status, the Court still considers such circumstances. See Jorgensen, 351 F.3d at 50 (noting that

---

[2] Although Plaintiff sent to the ALJ the tax returns for the missing years on October 14, 2019, see R. 286, her husband at that point still did not have an initial determination or a decision on reconsideration that could enable the ALJ to make a decision regarding the earnings record claim in accordance with the four-step administrative review process.

district courts must read *pro se* pleadings "liberally and interpret them to raise the strongest arguments that they suggest"). The Court of Appeals has held that "a plaintiff's failure to exhaust administrative remedies can be excused if (1) the claim is collateral to a demand for benefits, (2) exhaustion would be futile, or (3) requiring exhaustion would result in irreparable harm." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

First, Plaintiff's claim is not "collateral" to her late husband's demand for benefits because the requested corrections to Peter's earnings record would directly affect the RIB entitlement amount. See Escalera, 457 F. App'x at 6 ("[Plaintiff's] claim is not collateral to his demand for benefits, as it involves a demand for benefits and investigation into his wage earnings."). Second, exhaustion would not be "futile," as attempting to address Peter's earnings record claim through the proper administrative process could result in the relief that Plaintiff seeks, "or a more complete review in federal court" if her claim is not successful after properly exhausting it. Id. at 6–7. Finally, there is nothing in the record that suggests that exhausting the incorrect earnings record claim "would result in irreparable harm." Skubel, 113 F.3d at 334. In her reply brief, Plaintiff indicates that any additional RIB entitlement would be "used to establish scholarships for talented, low-income students to study classical music in [her] husband's memory." ECF No. 32 at 5. While Plaintiff's intention is admirable, it does not suggest that Plaintiff would suffer any sort of "physical harm or . . . the type of harm that would rise to the level of irreparable injury to excuse the exhaustion requirement." Mathews v. Chater, 891 F. Supp. 186, 189 (S.D.N.Y. 1995). Therefore, the record does not support excusing the exhaustion requirement with respect to Plaintiff's incorrect earnings record claim.

Accordingly, because Plaintiff's incorrect earnings record claim is not fully exhausted and because there is no reason to excuse the exhaustion requirement, the Commissioner's motion for summary judgment is granted.

**CONCLUSION**

Plaintiff's motion for judgment on the pleadings is DENIED. The Commissioner's cross-motion for summary judgment is GRANTED, and the Commissioner's decision is AFFIRMED. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED: September 11, 2026
New York, New York